**CHIERFUE HER and Ge Xiong, Plaintiffs**

v.

**STATE FARM INSURANCE COMPANY, and Does 1–20, Defendants.**

**Case No. 1:13–CV–1095 AWI GSA.**

United States District Court, E.D. California.

Signed March 13, 2015.

Timothy I. Marks, Timothy I. Marks & Associates, Fresno, CA, for Plaintiffs.

Stephen Paul Ellingson, Hayes Scott Bonino Ellingson & McLay, Jamie A. Radack, Hayes Davis Bonino Ellingson McLay and Scott, Stephen M. Hayes, Hayes, Scott, Bonino, Ellingson & McLay LLP, Redwood Shores, CA, for Defendants.

## ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

ANTHONY W. ISHII, Senior District Judge.

This is an insurance dispute between Plaintiffs Chierfue Her ("Her") and Ge Xiong ("Xiong") and their former insurer, State Farm Insurance Company ("State Farm"). Plaintiffs have alleged state law claims for breach of contract and bad faith. State Farm now moves for summary judgment on all claims alleged against it. For the reasons that follow, the motion will be granted in part and denied in part.

### BACKGROUND [1]

In October 2011, Plaintiffs had a State Farm Renter's Insurance Policy ("the Poli-

1. "DUMF" refers to "Defendant's Undisputed Material Fact," and "PUMF" refers to "Plain-

cy"). *See* DUMF 1. The Policy had limits of $50,000 for personal property, $1,000 for cash, and $5,000 for jewelry. *See* Defendant's Ex. 1; Xiong Dec. ¶ 8. The Policy contained a section entitled "Your Duties After Loss." *See* DUMF 34. In pertinent part, that section provides:

After a loss to which this insurance may apply, you shall see that the following duties are performed:

. . .

(c) prepare an inventory of damaged or stolen property. Show in detail the quantity, description, age, replacement cost and amount of loss. Attach to the inventory all bills, receipts and related documents that substantiate the figures in the inventory;

. . .

(e) submit to us, within 60 days after the loss, your signed, sworn proof of loss which sets forth, the best of your knowledge and belief:

. . .

(6) an inventory of damaged or stolen personal property described in 2.c.

DUMF 34.

Additionally, under a section entitled "Conditions," the Policy contained a provision entitled "Concealment and Fraud." *See* DUMF 1. The "Concealment and Fraud" section reads: "This policy is void as to you and any other insured if you or any other insured under this policy has intentionally concealed or misrepresented any material fact or circumstances relating to this insurance, whether before or after the loss." *Id.*

On October 7, 2011, Xiong left her home around 11:00 a.m. and returned around 1:45 p.m., and discovered that a door had been forced and her bedroom ransacked. *See* Defendant's Ex. 2; Xiong Dec. ¶ 3. Plaintiffs contacted the Clovis Police Department and reported a burglary of their residence. *See* DUMF 2. Officer Griffith of the Clovis Police Department responded to the call. *See* Defendant's Ex. 2. Officer Griffith prepared a Crime Report that indicates: the burglars targeted the master bedroom and ignored all other rooms; the burglars rifled through the dresser drawers and a filing cabinet but no items were taken; the burglars broke into a deadbolted closet were they took large amounts of cash, jewelry, and a handgun; the burglars likely targeted the house and master bedroom because they were familiar with the house; and it did not appear that the burglars spent any time searching other locations inside the house. *See id.*; DUMF 2. The Crime Report indicates that the following items were stolen or damaged: (1) three doors; (2) $7,000 in cash; (3) one handgun; (4) seven silver bars; (5) four gold necklaces; and (6) seven gold bracelets. *See id.* The police told Plaintiffs to make a detailed examination of anything else that was missing and to describe missing items in as great a detail as possible in order to aid in the return of property in case an arrest was made. *See* Her Dec. ¶ 5; Xiong Dec. ¶ 5.

On Monday October 10, 2011, Plaintiffs contacted State Farm and made a claim under the Policy. *See* DUMF 3. State Farm appears to have set reserves of $4,300 for the claim. *See* Doc. No. 15–1 at p. 17. The same day, State Farm sent Plaintiffs a confirmation letter and a Personal Property Inventory Customer Worksheet ("the Worksheet"). *See* DUMF 3. The Worksheet lists the insured, the date of loss, and the "room" where items were damaged or lost. *See* Defendant's Ex. 7. The Worksheet has columns for quantity, a detailed description of an item, the brand name or model of an item, where the item was purchased, the age of the item, the current repair or replacement cost of the

tiff's Undisputed Material Fact."

item, and whether documentation for the item has been attached. *See id.* There is a warning that submitting a false claim is a crime, and a space for the insured's signature and date. *See id.* State Farm also advised Plaintiffs that the maximum recovery for any cash·stolen was $1,000.00 and that the maximum recovery for lost coins, jewelry, or fur was $5,000.00. *See* Her Dec. ¶ 8; Xiong Dec. ¶ 8. Plaintiffs were aware of these limitations. *See id.*

On October 11 and October 12, 2011, Plaintiffs provided State Farm with several lists ·of stolen or damaged "personal assets." *See* Defendants' Exs. 4, 5. The October 11 list identified 41 items, including electronic equipment, clothing, jewelry, cash, silver coins and bars, and damaged furniture. *See* Defendant's Ex. 4. The October 12 list identified four items, including a Rolex watch, a VCR, and damaged furniture. *See* Defendant's Ex. 5. On October 13, 2011, State Farm requested that Plaintiffs provide the age, replacement cost, brand names, receipts, and repair estimates for the identified items. *See* DUMF 37.

On October 25, 2011, Plaintiffs submitted four signed Worksheets. *See* Doc. No. 8. The Worksheets included: 2 televisions (a 19″ set valued at $429.99 and a 25″ set $1,099.99) purchased at Best Buy, 2 laptop computers purchased at Best Buy valued at $1,600.00, 1 desktop computer purchased at Costco valued at $1,500.00, 1 laser printer purchased at Costco valued at $350.00, 1 blue ray player purchased at Best Buy valued at $169.99, 1 3D Blue Ray purchased at Best Buy valued at $229.98, 1 VCR purchased at Sears valued at $475.99, 1 Sony digital camera purchased at Costco valued at $399.97, 1 Nikon digital camera purchased at Costco valued at $1,800.00, 1 Rolex watch purchased online and valued at $25,000.00, 1 handgun valued at $732.13, 5 men's suits valued at $2,500.00, 10 women's Hmong costumes valued at $2,000.00,

$19,500.00 in cash, 2 children's bed sets valued at $1,000.00, 1 mattress set valued at $3,000.00, 2 sofas/loveseats valued at $1,595.99, 1 corner sofa valued at $2,296.00, 2 night stands valued at $600.00, 1 dresser with mirror valued at $1,000.00, 10 dresses valued at $1,500.00, 1 metal filing cabinet valued at $145.00, 1,000 silver coins valued at $5,000.00, 3 silver bars valued at $1,800.00, 9 gold rings valued at $11,700.00, 3 silver necklaces for Hmong costumes valued at $3,450.00, 4 gold necklaces valued at $3,600.00, and 8 gold bracelets valued at over $20,000.00. *See* DUMF 8. In comparison to the lists submitted on October 11 and October 12, the October 25 Worksheets added a Sony digital camera, reduced the estimated value of the desktop computer from $2,000.00 to $1,500.00, increased the value of the nightstands from $500.00 to $600.00, reduced the value of the 19″ television set from $800 to $429.99, and reduced the value of the 25″ television from $1,800 to $1,099.99. *Cf.* DUMF's 4, 5 *with* DUMF 8.

Plaintiffs had to estimate and attempt to recall where, when, and for how much certain items were obtained. *See* Her Dec. ¶ 9; Xiong Dec. ¶ 9. Plaintiffs declare that they completed these forms to the best of their ability and estimated the costs of various items, such as cameras and televisions. *See id.* Because some of the items were purchased over six years prior, Her did not have a complete recollection of where, when, or for how much an item was obtained, or current value. *See* Her Dec. ¶ 12.· Plaintiffs listed additional sums knowing that they were not recoverable because State Farm wanted a complete list of everything missing or broken. *See* Her Dec. ¶ 10; Xiong Dec. ¶ 10. Plaintiffs submitted receipts for various items claimed, and submitted photographs of Xiong wearing traditional Hmong costumes and jewelry. *See* PUMF's 126–138. At least one of the receipts, for a 73″

television, is for an item that appears to have never been claimed as stolen. *Cf.* PUMF 131 *with* DUMF's 4, 5, 8 & Defendant's Ex. 2 at 55.

On November 11, 2011, State Farm requested an inspection, additional documentation to substantiate the claimed items, and furniture repair invoices. *See* Doc. No. 9.

On November 16, 2011, Plaintiffs sent State Farm receipts and bank statements, including a receipt for a Nikon camera purchased for $1,479.00, a receipt for a Nikon camera purchased for $149.99, and a receipt for a Canon camcorder for $849.99. *See* DUMF 10. The Canon camcorder and the lesser valued Nikon had not been claimed as stolen or damaged before. *See* DUMF's 4, 5, 8. Also on November 16, a State Farm inspector went through Plaintiffs' residence with Plaintiffs. *See* DUMF 59. The inspector was shown where items were taken from (including two intact piggy banks in the closet that Plaintiffs indicated had been emptied from the bottom) and where damaged furniture was located (except for two dresser drawers that had been discarded). *See id.;* Defendant's Ex. 10.

On November 17, 2011, State Farm interviewed Peggy Lee, who worked with Plaintiffs at the local State Farm agent's office. *See* Doc. No. 60. Lee said that Plaintiffs initially reported that $7,000 had been taken from their youngest daughter's piggy bank. *See id.*

On November 23, 2011, State Farm sent Plaintiffs a letter indicating that the investigation was ongoing and requested additional documentation and receipts, that Her provide a recorded statement, and that a Sworn Proof of Loss be submitted. *See* DUMF 39; Defendant's Ex. 12.

On November 28, 2011, Her gave a recorded statement. *See* DUMF 62. Her stated that his 17 year old and 9 year old daughters lived with him, that they moved to the rental four years ago following Her's full time language teaching position being reduced to part time and a foreclosure on their previous home. *See id.* Her stated that he and Xiong also earned money from farming and selling crops at farmers markets. *See id.* Her stated that the burglars had broken into the closet, that he stored jewelry, cameras, suits, etc. in the closet, and that after the police left additional items were discovered to be missing or damaged. *See* DUMF 63.

When asked about some of the stolen electronics, Her explained that his children had the 19″ and 25″ televisions in their rooms, and that he had purchased one television at Best Buy and the other at Walmart. *See* DUMF 11. Her stated that he had paid cash for the desktop computer and laser printer at Costco, and because he paid cash, Costco had no record of the purchase. *See* DUMF 12. Her stated that he purchased the Rolex online and made two payments with personal checks, one for $5,000 and one for $20,000. *See* DUMF 70. Her stated that he could not remember when he purchased the Rolex, 'and that the bank would not have records going back far enough. *See* DUMF 73.

Her stated that they noticed the damage to couches after the police left. *See* DUMF 69. Her stated that there was $19,000 in a waist-pouch that was stolen and $500 in the piggy banks, and that the burglars took the waist pouch and emptied the piggy banks. *See* DUMF 71.

On December 6, 2011, State Farm spoke to Plaintiffs' landlord, who said that he had been at the residence fixing a sprinkler the day of the burglary. *See* DUMF 75. The landlord went back to the residence on October 7 after Plaintiffs had informed him of the burglary. *See id.* The landlord indicated that it appeared that only the bedroom closet had been broken into, and

he specifically remembered seeing a television and a desktop computer in the living room. *See id.* The landlord did not hear anything about other rooms being robbed or about lost jewelry. *See id.*

On December 16, 2011, State Farm sent Plaintiffs a letter requesting that they submit a Sworn Proof of Loss, their Costco purchase history, records relating to the Rolex watch, and receipts and statements to support the claims for various electronics. *See* Defendant's Ex. 18. State Farm also requested that Plaintiffs report the additional stolen items to the police and obtain a final copy of the police report. *See id.*

Also on December 16, State Farm spoke to Officer Griffith, who recalled that Plaintiffs said that nothing in their kids' rooms was affected and that Plaintiffs did not mention any laptops or computers being missing. *See* DUMF 76. Officer Griffith recalled that the mattress in the master bedroom was in place, and also recalled seeing the DVD and VCR in the living room. *See id.*

On January 3, 2012, Plaintiffs submitted a Visa statement with a $422.67 charge at Walmart for items that were later identified as a 32″ television that cost $348 and a DVD player that cost $39.86. *See* DUMF's 16, 29. Plaintiffs also produced Costco reports that showed purchases for an $849.24 Canon camcorder, a $149.99 Nikon camera, a $1,479.99 Nikon camera, and two Sony cameras that cost $189.99 and $149.99. *See* DUMF 16.

On January 16, 2012, State Farm took another recorded statement from Her. *See* DUMF 80. When asked why the landlord and Officer Griffith indicated that the only room affected was the master bedroom, Her responded that the door to the master bedroom was opened and that Plaintiffs were informed that if more was discovered missing that a list would need to be made and provided. *See id.* Although State

Farm represented that Officer Griffith walked through each room with Her, Her had no recollection of walking through the rooms with Officer Griffith. *See id.* Her was asked why a VCR and a DVD player that had been listed as stolen were both in the police pictures taken during the investigation on October 7. *See* DUMF 81. Her did not know that the police had taken pictures. *See id.* State Farm indicated that an Examination Under Oath ("EUO") would be necessary. *See id.* Her attempted to withdraw the claim for the VCR and the DVD, but then, after apparently speaking with his wife Xiong, stated that Xiong had earlier told him that the players were stolen, but just now told him that his daughter had thrown the players away because they were no longer working. *See id.*

Later on January 16, 2012, State Farm sent Her a letter that requested additional receipts and documentation for the Rolex and the electronic equipment, the final police report, and a Sworn Proof of Loss. *See* Defendant's Ex. 21.

On January 23, 2012, State Farm reported Plaintiffs' claim to the California Department of Insurance for suspected fraud. *See* DUMF 83. The same day, State Farm sent a letter to Plaintiffs requesting that they submit to an EUO, and that State Farm had retained counsel from the law firm of McDowell, Shaw, Colman & Garcia to take Plaintiffs' EUO. *See* Defendant's Ex. 23.

On February 7, 2012, State Farm's coverage counsel sent a letter to Plaintiffs explaining when the EUO would be held, and requested that Plaintiffs submit a Proof of Loss, documentation regarding the Rolex, and receipts and documentation regarding the various electronics claimed. *See* Defendant's Ex. 24.

On February 23, 2012, Plaintiffs gave their EUO's. Her testified that two televi-

sions (from his daughters' rooms), three cameras, two laptop computers, and a desktop computer had been stolen. *See* DUMF's 18, 19, 20. When asked about the landlord's statement that the desktop computer was still in place, Her said that there was a broken desktop that was still in place underneath a workstation, but a working desktop that had been on top of the workstation was stolen. *See* DUMF 19. When asked about the VCR and DVD that appeared in the police photo, Her testified that he made a mistake listing the VCR and DVD player because his daughter had thrown them away without telling him. *See* DUMF 91. With respect to the Rolex, Her testified that he bought the Rolex on-line, used part of a $70,000 profit from the sale of his house to buy the Rolex, and purchased the Rolex using money orders from a liquor store. *See* DUMF 93. Her testified that he did not keep the instructions, the box, or warranty, and did not register the watch. *See* DUMF 94. Her advised State Farm's counsel that he was not submitting a claim for the Rolex, but since it was listed on the police report, he did not want to withhold anything. *See* Her Dec. ¶ 13. Her was aware that his wife's coins and jewelry far exceeded the policy limits. *See id.* When asked about why $7,000 was reported as stolen to the police on October 7, and $7,000 was reported as stolen to State Farm Agent Lee on October 10, but that $19,500 was claimed as stolen on October 11, Her testified that he was not sure what his wife had told the police or the agent and that they had money scattered throughout the house. *See* DUMF 97. Her stated that their master bedroom mattress was tipped over, but the police photos show that the mattress was in place. *See* DUMF 99. Her testified that he did not notice that a total of 15

suits (5 men's and 10 women's) were missing from the closet, and that the absence of those suits would not have made a gap. *See* DUMF 96.

Xiong's EUO was conducted through an interpreter. *See* Defendant's Ex. 26 at 268. During her EUO, Xiong stated that when she entered the master bedroom with the police officer, the mattress was halfway on the floor. *See* DUMF 100; Defendant's Ex. 26 at 268:13–269:19. Xiong did not move the bed back in place. *See* DUMF 108. Xiong then went into the closet and looked for a purse that contained silver and gold chains and $10,000.00, but the purse had been taken. *See* DUMF 101. Xiong testified that she noticed a bag containing $7,000 was missing, and she told Bobby[2] to interpret to the police officer that the $7,000 was missing. *See id.* Xiong also saw, and reported to Officer Griffith, that $2,500 was slashed out of a suitcase. *See id.* Xiong testified that her Hmong clothes were stolen, and that her husband's suits were missing. *See* DUMF 103. Xiong stated that the closet was empty and that she told Officer Griffith about the missing clothes. *See id.* Xiong testified that there was one computer in the living room before the burglary, but that she did not know if there was another tower unit in the house during the burglary. *See* DUMF 104. Xiong testified that the computer was on top of the computer desk, and that nothing was stored underneath the computer desk. *See id.* Xiong testified that one computer and three laptops were stolen, as well as a camcorder, a small camera, and a large camera, and that no cameras were left behind by the burglars. *See* Doc. Nos. 105, 106. Xiong testified that, in addition to the Hmong costume chains, nine other

---

**2.** It is unknown who "Bobby" is, other than someone who was present with Xiong and Officer Griffith on October 7.

pieces of jewelry and Her's watch were stolen. *See* DUMF 107. The watch was discovered missing on October 7, and that was the only piece of jewelry that was discovered missing after Officer Griffith left. *See id.* Xiong testified that she told the police about the nine pieces of missing jewelry. *See id.* When asked why Her had claimed 24 pieces of jewelry had been stolen, even though Xiong had only identified 9 pieces, Xiong stated that she bought some pieces, Her bought some pieces, and her daughter bought some pieces for themselves. *See* DUMF 109. Xiong did not want the attorney to ask any more questions and stated that she had a heart problem and that the attorney would be responsible if she had a heart attack. *See id.*

On February 15, 2012, Plaintiffs submitted a supplemental report to the Clovis Police Department regarding the additional items that they claimed were stolen, including the 2 televisions, 2 laptop computers, 1 desktop computer, 2 DVD players, 1 VCR, 1 laser printer, 2 digital cameras, the Rolex, 2 children's mattresses, 1 mattress set, 2 sofas/loveseats, 1 corner sofa, 2 night stands, 1 dresser, 5 men's suits, 10 Hmong costume dresses, 10 women's suits, 1 metal filing cabinet, $12,500 cash, 7 gold bracelets, 4 gold necklaces, 4 gold rings, 1,000 pieces of silver, and 3 Hmong costume silver necklaces. *See* DUMF 26.

Also on February 15, State Farm's counsel sent a letter to Plaintiffs asking for contact information for two individuals, a receipt for the Walmart television, a Sworn Proof of Loss, and an authorization to obtain bank records regarding the Rolex. *See* Defendant's Ex. 28.

On March 2, 2012, State Farm's counsel sent a letter to Plaintiffs requesting the same information as that requested on February 15. *See* Defendant's Ex. 29.

On March 6, 2012, Plaintiffs provided State Farm with contact information for the two individuals, a signed authorization, and a Visa statement and corresponding Walmart receipt for a $39.86 DVD player and a $348.00 32" television set. *See* DUMF 29. Plaintiffs also submitted a Sworn Proof of Loss. *See id.* The Sworn Proof of Loss was signed only by Xiong. *See* Defendant's Ex. 30. The Sworn Proof of Loss indicates that Xiong believed that the loss occurred on October 7, 2011 at 2:00 p.m., the loss was caused by "theft, house was broke into," she leased the residence, she does not have other insurance that might apply, and the address of the residence was provided. *See id.* Under a section for whether an insured is attaching an inventory for claimed personal property, Xiong wrote "N/A" and did not fill in the box for the value of the claim that she was making for damaged personal property.[3] *See id.*

On March 14, 2012, State Farm's counsel (who had conducted the EUO's) recommended denying Plaintiffs' claim. *See* DUMF 115. State Farm's counsel summarized and divided the issues and discrepancies she saw with Plaintiffs' claim into twenty-six separate categories. *See id.*

On March 15, 2012, State Farm sought advice from counsel about Plaintiffs' submitted Sworn Proof of Loss. *See* DUMF 116. Counsel recommended rejecting the Sworn Proof of Loss as incomplete. *See id.*

On May 1, 2012, State Farm held a Claim Committee Meeting regarding Plaintiffs' claim. *See* DUMF 119. The

---

**3.** The relevant portion of the Sworn Proof of Loss reads: "I [am/am not] attaching an inventory which shows in detail the quantity, description, actual cash value, and amount of loss of all personal and business property for which claim is being made. I am making claim for $ _____ for damaged personal/business property." Defendant's Ex. 30.

Committee decided to deny the claim based on inconsistencies and misrepresentations during the claim presentation process. *See id.*

On May 22, 2012, State Farm sent Plaintiffs a letter that denied the claim. DUMF 120. In the letter, State Farm noted that the Policy required the Plaintiffs to cooperate. *See* Defendant's Ex. 37. However, Plaintiffs never submitted a completed Sworn Proof of Loss, or bank records regarding the Rolex, or a receipt for the television purchased at Walmart, and two individuals never contacted State Farm. *See id.* The letter indicated that the Sworn Proof of Loss did not include any amounts for which a claim was being made, and therefore the Sworn Proof of Loss was rejected. *See id.* The letter stated that discrepancies remained with respect to the Rolex, damaged furniture, electronics, and cash, and that unresolved inconsistencies existed between the Clovis Police Department, the landlord, and Plaintiffs' facts. *See id.* The letter stated that direct and circumstantial evidence existed that indicated Plaintiffs engaged in concealment or fraud and false swearing. *See id.* The letter then voided the Policy as of October 7, 2011. *See id.*

Plaintiffs later filed this lawsuit. During discovery, State Farm subpoenaed Costco records. *See* DUMF 125. The records do not show that Plaintiffs purchased a desktop computer for $1,500 or a laser printer for $350. *See id.* The records do reflect a Nikon digital camera was purchased for $1,479.99 and that two Sony cameras were purchased for $149.99 and $189.99. *See id.* However, no records reflect a camera purchased for $399.99. *See id.*

### *SUMMARY JUDGMENT FRAMEWORK*

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56; *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Fortyune v. American Multi–Cinema, Inc.,* 364 F.3d 1075, 1080 (9th Cir.2004). The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying the portions of the declarations (if any), pleadings, and discovery that demonstrate an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Soremekun v. Thrifty Payless, Inc.,* 509 F.3d 978, 984 (9th Cir.2007). A fact is "material" if it might affect the outcome of the suit under the governing law. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248–49, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *United States v. Kapp,* 564 F.3d 1103, 1114 (9th Cir.2009). A dispute is "genuine" as to a material fact if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505; *FreecycleSunnyvale v. Freecycle Network,* 626 F.3d 509, 514 (9th Cir.2010).

Where the moving party will have the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the movant. *Soremekun,* 509 F.3d at 984. Where the non-moving party will have the burden of proof on an issue at trial, the movant may prevail by presenting evidence that negates an essential element of the non-moving party's claim or by merely pointing out that there is an absence of evidence to support an essential element of the non-moving party's claim. *See James River Ins. Co. v. Hebert Schenk, P.C.,* 523 F.3d 915, 923 (9th Cir.2008); *Soremekun,* 509 F.3d at 984. If a moving party fails to carry its burden of

production, then "the non-moving party has no obligation to produce anything, even if the non-moving party would have the ultimate burden of persuasion." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.,* 210 F.3d 1099, 1105–06 (9th Cir.2000). If the moving party meets its initial burden, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Nissan Fire,* 210 F.3d at 1103. The opposing party cannot " 'rest upon the mere allegations or denials of [its] pleading' but must instead produce evidence that 'sets forth specific facts showing that there is a genuine issue for trial.' " *Estate of Tucker v. Interscope Records,* 515 F.3d 1019, 1030 (9th Cir. 2008).

The opposing party's evidence is to be believed, and all justifiable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. *See Anderson,* 477 U.S. at 255, 106 S.Ct. 2505; *Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348; *Narayan v. EGL, Inc.,* 616 F.3d 895, 899 (9th Cir. 2010). While a "justifiable inference" need not be the most likely or the most persuasive inference, a "justifiable inference" must be rational or reasonable. *See Narayan,* 616 F.3d at 899. "If conflicting inferences may be drawn from the facts, the case must go to the jury." *Holly D. v. Cal. Inst. of Tech.,* 339 F.3d 1158, 1175 (9th Cir.2003). Inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. *See Sanders v. City of Fresno,* 551 F.Supp.2d 1149, 1163 (E.D.Cal.2008); *UMG Recordings, Inc. v. Sinnott,* 300 F.Supp.2d 993, 997 (E.D.Cal.2004). "A genuine issue of material fact does not spring into being simply because a litigant claims that one exists or promises to pro-

duce admissible evidence at trial." *del Carmen Guadalupe v. Agosto,* 299 F.3d 15, 23 (1st Cir.2002); *see Bryant v. Adventist Health System/West,* 289 F.3d 1162, 1167 (9th Cir.2002). Further, a "motion for summary judgment may not be defeated … by evidence that is 'merely colorable' or 'is not significantly probative.' " *Anderson,* 477 U.S. at 249–50, 106 S.Ct. 2505; *Hardage v. CBS Broad. Inc.,* 427 F.3d 1177, 1183 (9th Cir.2005). If the nonmoving party fails to produce evidence sufficient to create a genuine issue of material fact, the moving party is entitled to summary judgment. *Nissan Fire,* 210 F.3d at 1103.

## *DEFENDANT'S MOTION*

### *1. Fraud & Concealment Clause*

#### *Defendant's Argument*

State Farm argues that Plaintiffs made numerous material misrepresentations. Although Plaintiffs claimed a $1,500 computer and a $350 laser printer that were both purchased at Costco, records from Costco reflect that no such purchases were ever made. Further, the Nikon D90 camera was valued at $1,800 but actually only cost $1,479.99; none of the Sony cameras cost $399.99, and at most one cost $189.99; of the two DVD players valued at $169.99 and $229.78, one actually cost only $39.86; of the 25″ television valued at $1,099.99 and the 19″ television valued at $429.99, Plaintiffs submitted a Walmart receipt for a 32″ television that was purchased for $348. The evidence shows that Plaintiffs misrepresented the value of the claimed items. There can be no dispute that an alleged purchase of an item that was claimed to be stolen, as well as the value of the item, constitute material misrepresentations. Such information directly affects the value of a claim, and thus affects State Farm's liability under the Policy. Because Plain-

tiffs made material misrepresentations, the Policy was properly voided and summary judgment is proper.

*Plaintiffs' Opposition*

Plaintiffs argue that State Farm asked them to give values for the property taken in the burglary and they did so to the best of their ability. Plaintiffs argue that they presented an honest and accurate estimate as to what they recalled the purchase price was or what the current value may be. For many of the items, Plaintiffs no longer had documentation and the items were purchased many years ago. For those items in which Plaintiffs had a receipt, exact prices were given. For those items in which no receipt was available, Plaintiffs gave their best estimate.

*Legal Standard*

 "A fraud and concealment provision in an insurance contract will generally void the policy where an insured attempts to defraud the. insurer." *Ram v. Infinity Select Ins.,* 807 F.Supp.2d 843, 853 (N.D.Cal.2011); *see Leasure v. MSI Ins. Co.,* 65 Cal.App.4th 244, 248, 75 Cal. Rptr.2d 900 (1998); *Cummings v. Fire Ins. Exchange,* 202 Cal.App.3d 1407, 1414–19, 249 Cal.Rptr. 568 (1988). An attempt to defraud the insurer may occur as part of an application to obtain insurance or as part of an attempt to obtain benefits under an existing insurance policy. *Ram,* 807 F.Supp.2d at 853; *Leasure,* 65 Cal.App.4th at 248, 75 Cal.Rptr.2d 900. In order for a policy to be voided under a fraud and concealment clause, the insured's misrepresentation must: (1) relate to a material matter; (2) be knowingly and wilfully made with knowledge of falsity; and (3) be made with the intent to defraud or deceive. *See Ram,* 807 F.Supp.2d at 853; *Mitchell v. United National Ins. Co.,* 127 Cal. App.4th 457, 470, 25 Cal.Rptr.3d 627 (2005); *Cummings,* 202 Cal.App.3d at 1416–18, 249 Cal.Rptr. 568; *Pedrotti v. American Nat'l Fire Ins. Co.,* 90 Cal.App.

668, 671, 266 P. 376 (1928). A misrepresentation is material if it relates to the insurer's "investigation to determine its obligations under the policy." *Leasure,* 65 Cal.App.4th at 248, 75 Cal.Rptr.2d 900. If an insured's misrepresentation "concerns a subject reasonably relevant to the insurer's investigation, and if a reasonable insurer would attach importance to the fact misrepresented, then it is material." *Ram,* 807 F.Supp.2d at 853; *Cummings,* 202 Cal.App.3d at 1417, 249 Cal.Rptr. 568. Materiality is generally a mixed question of law and fact, but may be decided as a matter of law if reasonable minds could not disagree on the materiality of the misrepresentation. *Ram,* 807 F.Supp.2d at 854; *Cummings,* 202 Cal.App.3d at 1417, 249 Cal.Rptr. 568. The issues of whether a statement was knowingly and willfully made with knowledge of falsity, and whether the statements were made with the intent to defraud, are both questions of fact. *Ram,* 807 F.Supp.2d at 853; *Cummings,* 202 Cal.App.3d at 1417, 249 Cal. Rptr. 568; *Pedrotti,* 90 Cal.App. at 671, 266 P. 376. However, the intent to defraud is necessarily implied "when the misrepresentation is material and the insured wilfully makes it with knowledge of its falsity." *Ram,* 807 F.Supp.2d at 853; *Cummings,* 202 Cal.App.3d at 1418, 249 Cal.Rptr. 568.

*Discussion*

 As discussed above, in order to void the Policy in this case, State Farm must show that Plaintiffs knowingly made false and material representations in order to defraud State Farm. *See Ram,* 807 F.Supp.2d at 853. State Farm has identified numerous representations by Plaintiffs as fraudulent. Many of the representations deal with either identifying items as stolen or damaged, or setting a value or replacement cost for the stolen or damaged items. Claiming a loss for things

that were not damaged by the covered event, or deliberately overstating the value or replacement cost of insured property, constitute material misrepresentations. *See Perovich v. Glens Falls Ins. Co.*, 401 F.2d 145, 147 (9th Cir.1968); *Hyland v. Millers Nat. Ins. Co.*, 91 F.2d 735, 741–43 (9th Cir.1937); *Nationwide Mut. Ins. Co. v. Ryan*, 2014 WL 4793890, *6, 2014 U.S. Dist. LEXIS 135829, *17 (N.D.Cal. Sept. 25, 2014); *Safeco Ins. Co. of Am. v. Bass*, 1994 WL 238300, *3, 1994 U.S. Dist. LEXIS 7199, *8 (N.D.Cal. May 17, 1994); *Newman v. Firemen's Ins. Co.*, 67 Cal.App.2d 386, 399, 154 P.2d 451 (1944). Thus, the representations identified by State Farm are generally "material." [4] However, the Court cannot hold as a matter of law that Plaintiffs knew that they were making false representations.

Whether a statement is knowingly and willfully made with knowledge of falsity is a question of fact. *See Ram*, 807 F.Supp.2d at 853; *Cummings*, 202 Cal.App.3d at 1417, 249 Cal.Rptr. 568; *Pedrotti*, 90 Cal.App. at 671, 266 P. 376. Cases in which summary judgment on this issue have been granted often involve an admission of some sort by an insured that he or she knew that a statement was false. *E.g. Herbert v. State Farm Mut. Auto. Ins. Co.*, 362 Fed.Appx. 748, 749–750 (9th Cir.2010) (insured's counsel admitted that the insured knew that a material statement was false); *Ram*, 807 F.Supp.2d at 854–55 (insured admitted making false statements); *Cummings*, 202 Cal.App.3d at 1417, 249 Cal.Rptr. 568 (insured admitted that she had lied). Here, Plaintiffs have made no admissions that they lied or that they knew they were making false statements.

Plaintiffs have declared that many of the items claimed as damaged or stolen were purchased many years ago, they did not have a complete recollection of when things were purchased or what the current value might be, but that they estimated the values to the best of their ability. *See* Her Dec. ¶¶ 9, 12; Xiong Dec. ¶ 9. That Plaintiffs may have over valued an item does not mean that they did so deliberately or with knowledge of falsity. *See Hyland*, 91 F.2d at 743 ("Mere overvaluation, of course, does not void a claim on the fraud and false swearing provision of the policy."). It is true that Plaintiffs submitted receipts and records that did not always correspond with either an item that was being claimed as stolen/damaged or the estimated value of such an item. However, it is not clear that Plaintiffs were actually making claims based on every receipt they submitted, *e.g.* DUMF 18, nor is it clear that the purchase price in a receipt is always a true reflection of *current* replacement costs. Moreover, it does not appear that the receipts were submitted simultaneously with the claim forms. Submitting a later found receipt that is contrary to an earlier provided estimation does not necessarily show knowledge of falsity; it may only show an inaccurate estimate.

State Farm has also identified contradictory statements between Her and Xiong during their EUO's regarding the number of pieces of jewelry that were stolen, the number of cameras that were stolen, and the number of computers that were stolen. Some of the contradictions do not have an express explanation, but could nevertheless be explained as either Her or Xiong simply making a mistake. For other contradictions, an explanation is given. In either case, Plaintiffs did not admit to knowingly making a false statement. The

---

**4.** It is not clear to the Court that each representation relied upon by State Farm is "material." For purposes of this motion, it is enough to recognize that State Farm has identified some material representations by Plaintiffs, i.e. statements regarding whether an item was stolen and the value thereof.

Court cannot hold that the explanations are so outlandish that no reasonable trier of fact would give them credence. A jury will evaluate Plaintiffs' explanations and representations. *See Ram,* 807 F.Supp.2d at 853; *Cummings,* 202 Cal.App.3d at 1417, 249 Cal.Rptr. 568; *Pedrotti,* 90 Cal. App. at 671, 266 P. 376.

State Farm has identified inconsistences, contradictions, and overestimations. However, Plaintiffs do not admit to knowingly making false statements, and State Farm has not established as a matter of law that Plaintiffs knowingly made false material representations. Knowledge of falsity remains a question of fact that a jury must resolve. As result, State Farm has not established that the policy is void due to the "fraud and concealment" clause. Summary judgment on this issue is will be denied.

### 2. Sworn Proof of Loss

*Defendant's Argument*

State Farm argues that the omissions from Plaintiffs' Sworn Proof of Loss were material and not trivial. The Policy specifically required Plaintiffs to submit a Sworn Proof of Loss setting forth the value of their claim and the items that they claimed were stolen. Ownership and value of stolen property were obviously important to State Farm's investigation. State Farm required clarification and confirmation from the Sworn Proof of Loss in light of Plaintiffs' contradictions misrepresentations, and inconsistencies. State Farm requested the Sworn Proof of Loss on several occasions, yet when Plaintiffs finally submitted the document, they omitted the itemization and value of their stolen property and Her never signed the document. The failure of Plaintiffs to follow the Policy's Sworn Proof of Loss requirement makes summary judgment proper.

*Plaintiffs' Opposition*

Plaintiffs argue that State Farm's position is infirm. Plaintiffs argue that if they had not underwent extensive hours of EUO's under penalty of perjury, then State Farm's position may be somewhat plausible. However, Plaintiffs underwent extensive EUO's under penalty of perjury, submitted receipts for listed items, and underwent recorded statements. Plaintiffs argue that their conduct constitutes substantial compliance with the requirement of submitting a Sworn Proof of Loss. Therefore, summary judgment is not appropriate.

*Legal Standard*

 Provisions of an insurance policy that require an insured to cooperate and meet various conditions are enforceable, and the violation of such provisions by an insured may be grounds for denying a claim. *See Abdelhamid v. Fire Ins. Exchange,* 182 Cal.App.4th 990, 999–1001, 106 Cal.Rptr.3d 26 (2010); *Brizuela v. CalFarm Ins. Co.,* 116 Cal.App.4th 578, 587–91, 10 Cal.Rptr.3d 661 (2004). "In the context of cooperation that does not involve submission to an [EUO], California courts require a showing that the insurer was prejudiced in its investigation by the insured's failure to cooperate in order to void the policy." *Ram v. Infinity Select Ins. Co.,* 807 F.Supp.2d 843, 857 (N.D.Cal. 2011); *Martinez v. Infinity Ins. Co.,* 714 F.Supp.2d 1057, 1061–62 (C.D.Cal.2010); *Brizuela,* 116 Cal.App.4th at 590–91, 10 Cal.Rptr.3d 661. An insurance policy may require that an insured submit a sworn proof of loss in a limited time frame, and such a provision is meant to give the insurer the necessary facts to facilitate an investigation of a claim and to protect it against fraudulent and excessive claims. *See Dellar v. Frankenmuth Mut. Ins. Co.,* 173 Mich.App. 138, 433 N.W.2d 380, 383 (1988); *Francis v. Iowa Nat'l Fire Ins.*

Co., 112 Cal.App. 565, 571, 297 P. 122 (1931); 13 Couch On Ins. § 186:8 at 186–23 (3d ed.2005). The submission of a proof of loss by the insured is subject to the substantial performance standard. *See 1231 Euclid Homeowners Assn. v. State Farm Fire & Casualty Co.*, 135 Cal. App.4th 1008, 1018, 37 Cal.Rptr.3d 795 (2006); *McCormick v. Sentinel Life Ins. Co.*, 153 Cal.App.3d 1030, 1046, 200 Cal. Rptr. 732 (1984). The issue is not whether the insurer has received every item of information that it has requested or has in its hands the exact type of information that it prefers when deciding a claim, rather *the question is whether there was enough evidence of whatever form and however acquired that the insurer would act unreasonably if it refused to pay the claim. McCormick*, 153 Cal.App.3d at 1046, 200 Cal.Rptr. 732 (emphasis added). However, if the deficiencies in an insured's submissions are substantial and "a far cry from minor defects," then there is no substantial performance. *Abdelhamid*, 182 Cal.App.4th at 1000–01, 106 Cal.Rptr.3d 26. Further, the total failure to comply with the notice and proof of loss conditions will excuse an insurer's potential liability due to failure of a condition precedent. *See Hickman v. London Assurance Corp.*, 184 Cal. 524, 529, 195 P. 45 (1920); *1231 Euclid*, 135 Cal.App.4th at 1018, 37 Cal. Rptr.3d 795.

### Discussion

■ State Farm has established that Plaintiffs failed to complete and submit a signed sworn proof of loss form as required by the policy. There is no doubt that submission of the sworn proof of loss form would fit under the duty to cooperate, especially when submission of such a form is mandated by the policy. However, State Farm was also required to show that its investigation was prejudiced by Plaintiffs' failure to fully meet the proof of loss requirement. *See Ram*, 807 F.Supp.2d at

857; *Martinez*, 714 F.Supp.2d at 1061–62; *Brizuela*, 116 Cal.App.4th at 590–91, 10 Cal.Rptr.3d 661. State Farm presented no evidence of prejudice. Establishing that a particular form was not fully completed, and identifying possible misrepresentations, are not sufficient. No one from State Farm who was involved in the investigation addressed how the absence of a completed sworn proof of loss form caused prejudice. Without evidence that the investigation was prejudiced due to the absence of a fully completed sworn proof of loss, summary judgment is inappropriate.

■ Additionally, Plaintiffs have raised the issue of substantial compliance. There is no dispute that Plaintiffs submitted multiple forms that identified items that were stolen or damaged, provided some receipts, gave recorded statements, permitted investigators to examine their home, and underwent extensive EUO's. That a sworn proof of loss form was not fully completed does not mean that State Farm did not otherwise have sufficient information from other sources to act on Plaintiffs' claim. *See McCormick*, 153 Cal.App.3d at 1046, 200 Cal.Rptr. 732. This is especially so since the EUO's included questions about items and values listed by Plaintiffs in other forms/documents, and Plaintiffs clarified that they were not making claims/withdrawing claims for some items. Aside from the absence of evidence regarding prejudice, summary judgment is also improper because there is a genuine dispute on the issue of Plaintiffs' substantial compliance.

### 3. Bad Faith

#### Defendant's Argument

Because State Farm did not breach the contract as explained above, there is no liability for bad faith. Alternatively, there was a genuine dispute between State Farm

and Plaintiffs. State Farm's investigation revealed numerous misrepresentations and contradictions. Plaintiffs initially reported six categories of stolen items, including $7,000 in cash. By the time Plaintiffs submitted their claims, the list had grown to 26 categories, including $19,500 in cash. State Farm conducted an inspection, took recorded statements, attempted to obtain documentation, retained counsel, and took Plaintiffs EUO's. Plaintiffs made false statements regarding the existence and value of certain items. For example, numerous electronic items were listed, yet the police report indicates that no electronics were stolen. Further, the crime report does not list Hmong costumes or other suits as stolen. Further, the Plaintiffs' respective EUO's were inconsistent and contradictory regarding the number of laptops stolen and the number of jewelry items that were stolen. Her's story about the Rolex was illogical and unsubstantiated. Given the advice of counsel and the inconsistencies revealed during investigation, there was clearly a genuine dispute which precludes a finding of bad faith.

### Plaintiffs' Opposition

Plaintiffs argue that what State Farm put them through reflects that State Farm put its interests before their insureds. State Farm had placed a $4,300 reserve on the claim, despite the value of the stolen jewelry, handgun, and cash. Plaintiffs argue that they did basically everything that was asked of them, including completing loss forms, submitting receipts and documentation, subjecting themselves to a detailed recorded statement, and subjecting themselves to lengthy EUO's. State Farm ignored the evidence that supported Plaintiffs' claim, and focused on facts that would justify a denial. Further, at the EUO's, Xiong was laughed at by the examining retained counsel, and an inordinate amount of time was spent on irrelevant items where no claim was submitted or the amount available under the Policy was already exceeded. State Farm engaged in a pattern of bullying and bad faith. Such oppressive conduct by claims adjusters that seek to reduce the amounts that are legitimately payable breach the duty of good faith.

### Legal Standard

■■■■■ All insurance contracts include the implied covenant of good faith and fair dealing. *See Shade Foods, Inc. v. Innovative Products Sales & Marketing, Inc.,* 78 Cal.App.4th 847, 879, 93 Cal.Rptr.2d 364 (2000). A "bad faith" claim against an insurer is based on a breach of the implied covenant of good faith and fair dealing, which exists to assure the insurer makes prompt payment of claims to the insured. *Buxbaum v. Aetna Life & Casualty Co.,* 103 Cal.App.4th 434, 442, 126 Cal.Rptr.2d 682 (2002). "When benefits are due an insured, delayed payment based on inadequate or tardy investigations, oppressive conduct by claims adjusters seeking to reduce the amounts legitimately payable, and numerous other tactics may breach the implied covenant ...." *Waller v. Truck Ins. Exchange, Inc.,* 11 Cal.4th 1, 36, 44 Cal.Rptr.2d 370, 900 P.2d 619 (1995). The duty of good faith and fair dealings requires "an insurer to give at least as much consideration to the interests of the insured as it gives to its own interests." *Wilson v. 21st Century Ins. Co.,* 42 Cal.4th 713, 720, 68 Cal.Rptr.3d 746, 171 P.3d 1082 (2007); *Maslo v. Ameriprise Auto & Home Ins.,* 227 Cal.App.4th 626, 633, 173 Cal.Rptr.3d 854 (2014). To establish a bad faith claim against an insurer, the insured must show that: (1) benefits due under the policy were withheld; and (2) the reason for withholding the benefits was unreasonable or without proper cause. *See Bravo v. United States Life Ins. Co.,* 701 F.Supp.2d 1145, 1159 (E.D.Cal.2010); *Wilson,* 42 Cal.4th at 723, 68 Cal.Rptr.3d 746, 171 P.3d 1082; *Progressive West Ins. Co.*

*v. Superior Ct.,* 135 Cal.App.4th 263, 278, 37 Cal.Rptr.3d 434 (2005).

■ However, "an insurer denying or delaying the payment of policy benefits due to the existence of a genuine dispute with its insured as to the existence of coverage liability or the amount of the insured's coverage claim is not liable in bad faith even though it might be liable for breach of contract." *Wilson,* 42 Cal.4th at 723, 68 Cal.Rptr.3d 746, 171 P.3d 1082; *Jordan v. Allstate Ins. Co.,* 148 Cal. App.4th 1062, 1073, 56 Cal.Rptr.3d 312 (2007); *Chateau Chamberay Homeowners Assn. v. Associated Internat. Ins. Co.,* 90 Cal.App.4th 335, 349, 108 Cal.Rptr.2d 776 (2001). "A genuine dispute exists only where the insurer's position is maintained in good faith and on reasonable grounds." *Wilson,* 42 Cal.4th at 723, 68 Cal.Rptr.3d 746, 171 P.3d 1082; *Maslo,* 227 Cal. App.4th at 636, 173 Cal.Rptr.3d 854. "The genuine dispute rule does not relieve an insurer from its obligation to thoroughly and fairly investigate, process and evaluate the insured's claim." *Wilson,* 42 Cal.4th at 723, 68 Cal.Rptr.3d 746, 171 P.3d 1082; *Maslo,* 227 Cal.App.4th at 636, 173 Cal. Rptr.3d 854. The "genuine dispute" doctrine will not apply when the insurer engages in a biased investigation. *See Pyramid Techs., Inc. v. Hartford Cas. Ins. Co.,* 752 F.3d 807, 823 (9th Cir.2014); *Guebara v. Allstate Ins. Co.,* 237 F.3d 987, 996 (9th Cir.2001); *Chateau Chamberay,* 90 Cal. App.4th at 348–49, 108 Cal.Rptr.2d 776. "The 'genuine dispute' doctrine may be applied where the insurer denies a claim based on the opinions of experts." *Chateau Chamberay,* 90 Cal.App.4th at 347, 108 Cal.Rptr.2d 776; *Fraley v. Allstate Ins. Co.,* 81 Cal.App.4th 1282, 1292, 97 Cal.Rptr.2d 386 (2000). "The reasonableness of the insurer's decisions and actions must be evaluated as of the time that the decisions were made," and not in the light of subsequent events. *Jordan,* 148 Cal. App.4th at 1073, 56 Cal.Rptr.3d 312.

## Discussion

■ State Farm has established that a genuine dispute existed with Plaintiffs regarding the issue of fraud. State Farm conducted a thorough investigation. As discussed above, State Farm sent investigators to examine Plaintiffs home, requested receipts and other documents, interviewed third parties, considered the police report, took statements and EUO's, and retained outside counsel. Outside counsel examined the documents and the evidence and recommended denying Plaintiffs' claim and voiding the policy pursuant to the fraud and concealment clause. Counsel's opinion had a basis in the facts of the claim. As extensively detailed above, Plaintiffs submitted multiple lists of allegedly stolen items. The lists differed significantly from the items identified in the police report. The pictures taken at the scene were not necessarily consistent with the damages claimed. Statements from the investigating police officer and from Plaintiffs' landlord were not necessarily consistent with the damages claimed by Plaintiffs. Plaintiffs gave inconsistent responses in the recorded statements and their EUO's. Plaintiffs submitted receipts for items that did not precisely match the items that were claimed as stolen or damaged, and Plaintiffs' statements regarding the availability of records and documentation was not necessarily correct. Plaintiffs submitted various estimated values or replacement costs that appeared excessive. Finally, Plaintiffs' financial situation did not appear to be strong, which suggests a motive to inflate the losses that were actually suffered. These considerations show that State Farm denied the claim and voided the Policy in good faith and on reasonable grounds. *See Wilson,* 42 Cal.4th at 723, 68 Cal.Rptr.3d 746, 171 P.3d 1082; *Maslo,* 227 Cal.App.4th at 636, 173 Cal. Rptr.3d 854.

There is insufficient evidence that a biased investigation occurred. *Cf. Pyramid Techs.*, 752 F.3d at 823; *Chateau Chamberay*, 90 Cal.App.4th at 348–49, 108 Cal. Rptr.2d 776. No evidence has been submitted that suggests either State Farm misrepresented the nature of the investigation or lied to Plaintiffs. Similarly, there is no evidence that State Farm dishonestly selected outside counsel or its investigators, nor is there evidence that outside counsel or the investigator were unreasonable or biased. Plaintiffs argue that outside counsel was disrespectful during the EUO, including laughing at Xiong. Arrogant, hostile, or sarcastic conduct, combined with other evidence, may support a bad faith claim. *See* H. Walter Croskey, et al., Cal. Practice Guide: Insurance Litigation, ¶ 12:936 (The Rutter Group 2014); *cf. Egan v. Mutual of Omaha Ins. Co.*, 24 Cal.3d 809, 821–22, 169 Cal.Rptr. 691, 620 P.2d 141 (1979). However, the circumstances in which the laughing occurred are not described, other than that it occurred at some point during Xiong's EUO. The single incident of counsel laughing (under unclear circumstances) is alone insufficient to demonstrate bad faith.

▮ Plaintiffs also contend that State Farm focused on items for which no claim was being made, and ignored evidence that supported the claim. Bad faith may be present when an insurer ignores evidence that supports a claim and focuses on facts that would justify a denial. *See Wilson*, 42 Cal.4th at 721, 68 Cal.Rptr.3d 746, 171 P.3d 1082. Here, State Farm spent time on the Rolex despite the value of other stolen jewelry exceeding the

$5,000 cap, and Her expressly withdrawing any claim for the Rolex during his EUO. However, conduct involving the Rolex was one piece of the entire investigation. Plaintiffs have not established that State Farm focused or spent inordinate amounts of time on immaterial matters.[5] As discussed above, the entirety of the circumstances surrounding Plaintiffs' claim suggested the possibility of fraud, and State Farm contacted the Department of Insurance regarding possible fraud, pursuant to California Insurance Code § 1872.4. State Farm was justified in exploring the possibility of fraud, and Plaintiffs have not presented evidence that indicates that State Farm's investigation was not justified or was otherwise unreasonable.

Finally, Plaintiffs cite to *Fraley v. Allstate Ins. Co.*, 81 Cal.App.4th 1282, 97 Cal.Rptr.2d 386 (2000) to argue that State Farm should have paid the portions of the claim that were established and essentially undisputed. In *Fraley,* the dispute between the insured and the insurer involved a homeowner's policy, and the primary bad faith issue involved selection of contractors and accuracy of appraisal values. *See Fraley,* 81 Cal.App.4th at 1291–93, 97 Cal. Rptr.2d 386. No bad faith was found, and the appellate court noted that Allstate had acted reasonably by *inter alia* paying undisputed cash values. However, *Fraley* did not involve possible fraud or a fraud and concealment clause that could have voided the entire policy. The basis for withholding payment in *Fraley* is not at all like the basis for withholding payment in this case. Plaintiffs have not shown that *Fraley* is probative.

---

5. The Court notes that Plaintiffs' counsel represents that an inordinate amount of time was spent on items for which no claim was being made or had been withdrawn. However, no evidence is cited. An attorney's unsupported assertions will not create a genuine disputed

issue of material fact. *Barcamerica Int'l USA Trust v. Tyfield Importers, Inc.*, 289 F.3d 589, 593 n. 4 (9th Cir.2002); *Angel v. Seattle–First Nat'l Bank,* 653 F.2d 1293, 1299 (9th Cir. 1981).

In sum, State Farm has established that a genuine dispute existed regarding the fraud and concealment clause of the Policy. Summary judgment in favor of State Farm on this claim is appropriate.

### 4. *Punitive Damages*

 Punitive damages for breach of the covenant of good faith and fair dealing are available in insurance cases because of the special relationship between the insurer and the insured. *Jonathan Neil & Assocs., Inc. v. Jones*, 33 Cal.4th 917, 937, 16 Cal.Rptr.3d 849, 94 P.3d 1055 (2004). However, "without a bad faith claim, there can be no punitive damages claim." *Helus v. Equitable Life Assur. Soc'y of the U.S.*, 309 F.Supp.2d 1170, 1185 (N.D.Cal.2004); *see also Ayala v. Infinity Ins. Co.*, 713 F.Supp.2d 984, 988 (C.D.Cal.2010); *Behnke v. State Farm Gen. Ins. Co.*, 196 Cal.App.4th 1443, 1470–71, 127 Cal.Rptr.3d 372 (2011); *Chateau*, 90 Cal.App.4th at 351 n. 10, 108 Cal.Rptr.2d 776. Because summary judgment on Plaintiffs' bad faith claim is proper, summary judgment on their punitive damages claim is also proper. *See id.*

### CONCLUSION

State Farm moves for summary judgment on Plaintiffs' breach of contract, bad faith, and punitive damages claims. With respect to the breach of contract claim, State Farm has not established as a matter of law that it was proper to void the policy pursuant to the fraud and concealment clause. State Farm has also failed to establish as a matter of law that it was prejudiced by the failure of Plaintiffs to submit a sworn proof of loss form, or that Plaintiffs did not substantially comply. Therefore, summary judgment on this cause of action will be denied.

With respect to the bad faith cause of action, State Farm has established that it had a reasonable and good faith basis for denying Plaintiffs' claim and voiding the Policy. Plaintiffs have not sufficiently explained, or provided sufficient evidence, that undermines State Farm's investigation or conduct. Therefore, summary judgment will be granted.

Finally, the basis for Plaintiffs' punitive damages request is the bad faith claim. Because summary judgment is being granted on the bad faith claim, summary judgment also will be granted on Plaintiffs' request for punitive damages.

### ORDER

Accordingly, IT IS HEREBY ORDERED that Defendants' motion for summary judgment is DENIED on Plaintiffs' breach of contract cause of action, but is GRANTED on Plaintiffs' bad faith and punitive damages claim.

IT IS SO ORDERED.