NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 05a0082n.06
Filed: February 3, 2005

No. 03-4529

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

RUSSELL P. DOERR,

       Plaintiff-Appellant,             ON APPEAL FROM THE
                                          UNITED STATES DISTRICT
v.                                    COURT FOR THE NORTHERN
                                          DISTRICT OF OHIO

ALLSTATE INSURANCE COMPANY,

       Defendant-Appellee.

_____/

BEFORE: MARTIN and MOORE, Circuit Judges; BELL, District Judge.[*]

      **BELL, District Judge.** Plaintiff-Appellant Russell Doerr appeals the district court's

grant of summary judgment in favor of Defendant-Appellee Allstate Insurance Company.

On appeal, Doerr asserts that the district court erred by granting summary judgment because

genuine issues of material fact exist as to Doerr's compliance with the provisions of the

residential fire insurance policy issued by Allstate covering a rental property owned by

Doerr. For the reasons that follow we **AFFIRM** the judgment of the district court.

I.

_____

     [*]The Honorable Robert Holmes Bell, Chief United States District Judge for the
Western District of Michigan, sitting by designation.

Allstate issued Doerr a residential fire insurance policy effective from July 28, 2001 through July 28, 2002 covering a residential rental property in Northwood, Ohio. The policy included certain express conditions that the insured was required to comply with in the event of a loss. At issue in this case is the "cooperation clause" of the policy conditions. See Allstate Residential Fire Policy Section V(3) (J.A. 338). In this case, two provisions of the cooperation clause are at issue: 1) the insured must produce "all books of account, bills, invoices and other vouchers, . . . which we [Allstate] may reasonably request . . . ." and 2) the insured must produce records pertaining to any loss of rental value. (J.A. 338-39).

On April 8, 2002, a fire destroyed the property. Fire department and Allstate investigators determined that the fire was arson. Further, the investigators discovered that prior to the fire, the house had been in deplorable condition, Doerr was actively trying to liquidate the property, Doerr's agreement with the current tenant to purchase the home had fallen through, and the April 2002 rent had not been paid. In light of the suspicious circumstances, Allstate continued its investigation in order to determine who was responsible for the fire, whether Doerr was involved, and the nature of the relationship between Doerr and the current tenant.

In the months following the fire, Doerr began to satisfy the policy conditions. He protected the property from further loss by boarding up the windows and doors. He submitted a sworn statement of proof of loss and submitted to an examination under oath. After submitting the sworn statement of proof of loss, however, Doerr became increasingly uncooperative. In order to determine the extent of coverage for loss of rent, Allstate

requested various records relating to rental income and expenses for the insured property. Doerr failed to provide the requested records. Prior to Doerr's examination under oath, Allstate's counsel notified Doerr that, pursuant to the policy, Doerr needed to produce specific records at the examination. The requested records included income tax returns, rental property records, bank statements, credit card account statements, and cellular phone statements. Allstate also warned Doerr that they would require strict adherence to the policy terms and conditions.

Doerr appeared at his examination under oath, but refused to supply information of his exact whereabouts on April 8, 2002, and did not provide any of the requested records or documents. Doerr refused to provide evidence of his financial condition, his assets and expenses, utility records for the insured property, extent of phone calls between Doerr and the current tenant, and records to show if the tenant was paid to assist Doerr in managing rental properties. During the examination and in subsequent letters, Allstate explained to Doerr the relevance of the requested documents. Further, in subsequent letters to Doerr and his counsel, Allstate warned him that his non-compliance with the insurance policy conditions could result in a forfeiture of his rights under the policy. After Doerr and his counsel continued to refuse to produce the requested materials, Allstate concluded that their investigation of Doerr's claim was substantially impaired. Thus, Allstate denied Doerr's claim based on his failure to comply with the cooperation clause.

Thereafter, Doerr commenced the present action seeking a declaratory judgment and alleging breach of contract, bad faith, breach of fiduciary duty, unfair trade practices,

estoppel, punitive damages, and fraud against Allstate. On October 17, 2003, the district court granted Allstate's motion for judgment on the pleadings as to the declaratory judgment count and its motion for summary judgment on all the other counts holding that Doerr's failure to comply with the cooperation clause precluded his claims. Doerr appealed the grant of summary judgment on the breach of contract and bad faith claims.

## II.

This court reviews a grant of summary judgment *de novo*, viewing all evidence in the light most favorable to the nonmoving party. *Boone v. Spurgess*, 385 F.3d 923, 927 (6th Cir. 2004).

A cooperation clause is frequently included in an insurance policy to protect insurance companies against fraudulent claims. Under Ohio law, an insured party has a duty to comply with a cooperation clause. *Luntz v. Stern*, 20 N.E.2d 241, 244 (Ohio 1939); *Muhammad v. State Farm Fire and Cas. Co.*, No. 91-4119, 1992 WL 188118, *1 (6th Cir. Aug. 6, 1992) (unpublished). When an insured party fails to comply with the cooperation clause "the insurer may be relieved of further obligation with respect to a claim with which the insured did not cooperate." *Gabor v. State Farm Mut. Auto. Ins. Co.*, 583 N.E.2d 1041, 1043 (Ohio Ct. App. 1990). An insured party's non-compliance must result in material and substantial prejudice to the insurance company in order to justify a denial based upon non-cooperation. *Id*. An insured's compliance with a cooperation clause is generally a question of fact. *Id*. A court, however, may decide the cooperation clause issue as a matter of law where the facts are undisputed. *Id*.

Doerr first argues that the district court erred in granting summary judgment for Allstate because disputed issues of fact remain regarding Doerr's compliance with the cooperation clause. In support, Doerr argues that he complied with the policy by submitting a proof of loss, protecting the property from further damage, and appearing for an examination under oath. Doerr contends that these actions fulfilled his obligations under the insurance contract. This argument is without merit. Undoubtedly, Doerr complied with certain aspects of the policy. But this does not create an issue of fact because he clearly did not comply with all of the conditions of the policy, specifically, the requirement that he produce documents and records reasonably requested by Allstate. Doerr is bound by the terms of his insurance contract, including a term requiring production of records. Accordingly, compliance with some of the policy's conditions precedent does not excuse failure to comply with all of the conditions precedent. *See e.g., Walker v. Buck*, 621 N.E.2d 1307, 1309 (Ohio Ct. App. 1993) ("A party claiming insurance coverage has the burden of establishing compliance with all provisions of the insurance policy which are precedent to his right to recover . . . .") (quoting *Felicity-Franklin Bd. of Educ. v. Nationwide Mut. Ins. Co.*, 565 N.E.2d 618, 620 (Ohio Com. Pl. 1989).

Doerr does not dispute that he did not cooperate with Allstate's requests for various records and documents. Rather, he contends that the requested financial records, income tax returns, rental property records, bank statements, credit card account statements, and cellular phone records were not relevant to Allstate's investigation and materially altered the policy conditions.

We do not agree with Doerr's characterization of Allstate's request for records. The surrounding circumstances indicated that the fire was intentionally set. Therefore, Doerr's financial condition at the time of the fire was relevant to the investigation. *See Templin v. Grange Mut. Cas. Co.*, 611 N.E.2d 944, 947 (Ohio Ct. App. 1992) (holding that insured's financial position is relevant to establishing motive for arson). Further, Doerr's contention that his income tax forms and bank statements are not relevant is without merit. Income tax forms and bank records are relevant documentary evidence demonstrating an insured's financial condition. *Gabor*, 583 N.E.2d at 1044 (citing *Moore v. State Farm Fire & Cas. Co.*, Nos. 9200 and 9376, 1985 WL 62876, *3 (Ohio Ct. App. Dec. 3, 1985) (unpublished) (holding that income tax records are relevant where an insurer raises arson as an affirmative defense)). Finally, Doerr's cellular phone records are also arguably relevant to determining his whereabouts and contacts around the time of the fire.

Moreover, there is no merit to Doerr's contention that the records request materially altered the policy conditions. The policy specifically states that an insured party must comply with Allstate's reasonable requests to examine documents and records in the event of a loss. The documents requested were relevant to motive and opportunity to commit arson. Accordingly, Allstate's requests were reasonable and did not materially alter the policy conditions.[1] *Gabor*, 583 N.E.2d at 1044 (citing *Moore*, 1985 WL 62876); *see also Northedge Lab., Inc. v. Cincinnati Ins. Co.*, No. CA 10090, 1987 WL 7513, *4 (Ohio Ct.

---

[1]Doerr's argument that Allstate's request was unreasonable because certain records did not exist is similarly without merit. The apparent non-existence of a written lease agreement between Doerr and Hutton does not excuse Doerr's refusal to provide relevant financial records that certainly do exist (i.e., income tax forms).

App. March 3, 1987) (holding that insured failed to comply with cooperation clause by not disclosing bank records despite the fact that such records were not specifically enumerated in the policy language).

Further, we hold that Doerr's non-cooperation resulted in material and substantial prejudice to Allstate as a matter of law. In *Gabor*, the Ohio Court of Appeals held that an insured's refusal to produce his income tax records materially prejudiced the insurer's arson investigation as a matter of law. *Id.* Similarly, in this case, Allstate's investigation was materially prejudiced by Doerr's refusal to produce relevant records. Due to Doerr's continued refusal, Allstate was unable to determine motive, alibi, or any other aspect of Doerr's involvement (or non-involvement) in the fire. Without the requested documentary evidence, Allstate was unable to determine the truth or falsity of Doerr's claims. In short, Allstate was unable to complete a full and fair investigation of the arson. Accordingly, Doerr's refusal to produce the requested records was a breach of his duty to cooperate and materially prejudiced Allstate's investigation.

Doerr next asserts that Allstate conducted a one-sided inquiry in bad faith into the circumstances surrounding the fire. In support, Doerr cites *Zoppo v. Homestead Ins. Co.*, 644 N.E.2d 397 (Ohio 1994), in which the Ohio Supreme Court reinstated a trial court's finding of bad faith on the part of an insurance company in investigating a fire loss. The court held that an insurer fails to exercise good faith where it fails to provide a reasonable justification for refusing to pay a claim. *Zoppo*, 644 N.E.2d at 399-400. Doerr contends Allstate did not have a reasonable justification for denying his claim and therefore summary judgment was

improper. Further, Doerr argues that Allstate failed to acknowledge exonerating evidence such as his alibi, financial security, and up-to-date bill payments.

As stated previously, Allstate was substantially prejudiced by Doerr's non-compliance. This provided Allstate with a reasonable justification for denying the claim. *See Gabor*, 583 N.E.2d at 1044. Moreover, Doerr has not offered any evidence that Allstate conducted a "one-sided" inquiry. To the contrary, the record before us demonstrates that Allstate attempted to fully investigate the claim but was prevented from doing so by Doerr's blatant refusal to provide relevant materials to Allstate. Doerr's allegation that Allstate ignored exonerating evidence is also unfounded. Based upon the record, Allstate attempted to substantiate Doerr's alibi and financial security through the document request and examination under oath. Allstate was unable to corroborate Doerr's claims because he refused to provide documentary evidence. Accordingly, we hold that the district court properly denied Doerr's claim of bad faith against Allstate.

### III.

For the foregoing reasons, we **AFFIRM** the district court's order granting Allstate's motion for summary judgment.