Ryan **GILBERT**, Plaintiff,

v.

**INFINITY INSURANCE COMPANY et al., Defendants.**

**EDCV 15-1306-VAP (SPx)**

United States District Court, C.D. California, Eastern Division.

Signed 05/12/2016

Andrew J. Knez, Fred J. Knez, Knez Law Group LLP, Riverside, CA, for Plaintiff.

Peter H. Klee, John D. Edson, Sheppard Mullin Richter and Hampton LLP, San Diego, CA, Keith M. Parker, ADR Services Inc., Irvine, CA, for Defendants.

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Virginia A. Phillips, United States District Judge

Before the Court is Defendant Infinity Insurance Company's ("Defendant") Motion for Summary Judgment. (Doc. No. 24, "Motion.")[1] Plaintiff Ryan Gilbert ("Plaintiff") filed his Opposition on April 11, 2016. (Doc. No. 29, "Opposition.") Defendant filed his Reply on April 18, 2016. (Doc. No. 34, "Reply.") After consideration of the papers filed in support of, and in opposition to, the Motion, the Court GRANTS the Motion.

---

1. Neither party's papers complied with Local Rules 5-4.5 and 11-3 regarding chambers copies. All chambers copies must be blue-backed, with page numbers, *exhibit tabs,* and all papers must be "firmly bound at the top and backed." L.R. 5-4.5, 11-3.5 (emphasis added). Counsel failed to use exhibit tabs in their papers. Such failure is not grounds to deny Defendant's Motion, but future failure to comply with the local rules will lead to sanctions.

## I. BACKGROUND

On March 24, 2015, Plaintiff filed the present action in the Superior Court of the State of California, County of Riverside, as Case No. RIC1503590. (Doc. No. 1, Ex. A ("Complaint") at 1.) The Complaint asserts two causes of action, (1) breach of contract, and (2) breach of the covenant of good faith and fair dealing, premised on Defendant's denial of insurance coverage for damage to Plaintiff's 2006 Toyota Tacoma. (Complaint at 2-3.) Defendant conducted an investigation, which included taking a recorded statement from Plaintiff, interviewing Plaintiff's brother, and investigating the circumstances surrounding Plaintiff's loss, and according to Plaintiff, denied Plaintiff's insurance claim for "lack of supporting documentation." (Complaint at 4.)

## II. EVIDENTIARY RULINGS

 Before setting forth the uncontroverted facts, the Court examines the admissibility of the evidence offered by both sides in support of, and opposition to, the Motion for Summary Judgment. "A trial court can only consider admissible evidence in ruling on a motion for summary judgment." Orr v. Bank of Am., 285 F.3d 764, 773 (9th Cir.2002). At this stage, however, a district court should "focus on the admissibility of the [evidence's] contents," "not . . . on the admissibility of [its] form." See Fraser v. Goodale, 342 F.3d 1032, 1036 (9th Cir.2003); Block v. City of Los Angeles, 253 F.3d 410, 418–19 (9th Cir.2001). Moreover, "objections to evidence on the ground that it is irrelevant, speculative, and/or argumentative, or that it constitutes an improper legal conclusion are all duplicative of the summary judgment standard itself" and thus need not be considered on a motion for summary judg-

ment. Burch v. Regents of Univ. of Cal., 433 F.Supp.2d 1110, 1120 (E.D.Cal.2006).

### A. Plaintiff's Objections

 Plaintiff makes seven objections to evidence submitted by Defendant. (Doc. No. 31, "Plaintiff's Objections.") Plaintiff's Objections 1, 2, 4, and 5 all contend that evidence "calls for speculation" and "calls for expert testimony." (Plaintiff's Objections at 1-6.) Plaintiff's Objections on the basis of speculation are OVERRULED. Such objections are duplicative of the summary judgment standard. Burch, 433. F. Supp. 2d at 1120. Plaintiff's Objections that evidence "calls for expert testimony" mischaracterize testimony submitted by Infinity's Special Claims Investigators. (Plaintiff's Objections at 1-6.) The Special Claims Investigators can describe their findings from the investigation conducted from their own personal knowledge. Fed. R. Evid. 602. See Fraser, 342 F.3d at 1037; Bafford v. Travelers Cas. Ins. Co. of Am., No. CIV S–11–2474 LKK/JKM, 2012 WL 5465951, at *8 (E.D.Cal. Nov. 8, 2012). Accordingly, Objections 1, 2, 4, and 5 are OVERRULED.

 Plaintiff objects to the Declaration of Catherine D. Glicks on the basis that it is irrelevant because only information known at the time of the denial of the insurance claim is relevant. (Plaintiff's Objections at 3-4.) Plaintiff also objects to the Declaration of Mr. Jan Null on the basis that it "calls for speculation," is conclusory, lacks foundation, and lacks relevance.[2] Defendant acknowledges this evidence is not relevant to Plaintiff's bad faith claim, but contends both declarations are relevant to Plaintiff's breach of contract claim because they relate to whether benefits are due under Plaintiff's policy, and whether the

---

**2.** To the extent Plaintiff objects because the Declaration calls for speculation, the Court OVERRULES such objections as duplicative of the summary judgment standard. Burch, 433. F. Supp. 2d at 1120.

adjuster's concerns were reasonable. (Response to Objections, Doc. No. 34-1, at 4, 6-8.) "[W]here valid grounds for denying coverage are established, the insured may be unable to show any recoverable damage resulting from the insurer's original 'unreasonable' denial." CAL. PRACTICE GUIDE: INSURANCE LITIGATION § 12C-D, 12:894. Accordingly, this evidence has not been considered in evaluating Plaintiff's bad faith claim as it is irrelevant, but has been considered only in evaluating Plaintiff's breach of contract claim. Accordingly, Plaintiff's Objections 3 and 6 are OVERRULED.

## B. DEFENDANT'S EVIDENTIARY OBJECTIONS

Defendant contends Plaintiff's Exhibits H and N, deposition excerpts, are inadmissible because they lack the reporter's certification and therefore have not been authenticated properly. (Defendant's Objections to Plaintiff's Evidence, Doc. No. 34-2, at 1-2.) Defendant further contends Plaintiff's Exhibit C, photographs of Plaintiff's truck, were not authenticated by any declaration or testimony. (Id. at 2.) Defendant also contends Exhibit FC, Exhibit G, Exhibit E, and Exhibit K have not been properly authenticated. (Id. at 3-4.)

■ A trial court "can only consider admissible evidence in ruling on a motion for summary judgment." Orr, 285 F.3d at 773. The Ninth Circuit has "repeatedly held that unauthenticated documents cannot be considered in a motion for summary judgment ... [D]ocuments authenticated through personal knowledge must be 'attached to an affidavit that meets the requirements of [Rule 56(e) of the Federal Rules of Civil Procedure] and the affiant must be a person through whom the exhibits could be admitted into evidence." Id. at 773–74 (holding that a deposition extract is authenticated when it identifies the names of the deponent and the action and includes the reporter's certification that the deposition is a true record of the testimony). Plaintiff blatantly submitted the reporter's certificate on May 2, 2016 to authenticate Exhibits H and N. (Doc. No. 35.) Accordingly, Defendant's Objections to Exhibit H and N are OVERRULED.

■ Plaintiff offered no authentication for Exhibits C, FC, G, E, and K.[3] Plaintiff's counsel submitted a declaration noting each exhibit is "true and correct." (See Declaration of Andrew J. Knez, Doc. No. 32.) Exhibit C, photographs of Plaintiff's truck, was not properly authenticated. Fed. R. Evid. 901. Plaintiff's counsel was not present at the time of the loss and therefore cannot represent that the photographs provided are an accurate representation of the state of Plaintiff's truck following the loss. Absent facts demonstrating Plaintiff's counsel's personal knowledge, the photographs provided have not been properly authenticated and are inadmissible. Defendant's objection to Exhibit C is SUSTAINED.

■ Similarly, Plaintiff's counsel's declaration is insufficient to authenticate Exhibit FC, a letter Plaintiff personally sent to Defendant, because Plaintiff's counsel does not have personal knowledge of the letter. Defendant's objection to Exhibit FC is SUSTAINED. Exhibits E and G appear to be printouts of Defendant's

---

**3.** At a hearing on this Motion held on May 9, 2016, Plaintiff's counsel argued some of these exhibits were excerpted from the exhibits Defendant submitted in support of its Motion. In his Opposition, Plaintiff submitted no such authenticity information showing that these were excerpts from Defendant's exhibits. At the hearing, Plaintiff's counsel contended the Court should have looked through Defendant's exhibits to determine whether any of his exhibits were excerpted, and then adopt Defendant's authentication for such exhibits. "Judges are not like pigs, hunting for truffles buried in [the record]." United States v. Dunkel, 927 F.2d 955, 956 (7th Cir.1991).

notes on Plaintiff's claim. Plaintiff's counsel again cannot authenticate such documents because he does not have personal knowledge of the documents, and the documents could not be admitted through him at trial. Defendant's objections to Exhibits E and G are SUSTAINED. Lastly, Exhibit K is a California Insurance Proof Certificate. Plaintiff's counsel has provided no evidence demonstrating the provenance of the Exhibit; therefore, the Exhibit has not been authenticated properly. Defendant's Objection as to Exhibit K is SUSTAINED.

■ Defendant also objects to paragraphs 4 and 5 of the Declaration of Art Fierro, Exhibit J, on the basis that they are inadmissible hearsay. (Id. at 4–5.) Paragraphs 4 and 5 detail a conversation between Plaintiff and Art Fierro, the contents of which are offered for the truth of the matter asserted. Given that the statements constitute hearsay for which no exception applies, the objection is SUSTAINED.

## III. LEGAL STANDARD

### A. MOTION FOR SUMMARY JUDGMENT

A motion for summary judgment or summary adjudication shall be granted when there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The moving party must show that "under the governing law, there can be but one reasonable conclusion as to the verdict." Anderson, 477 U.S. at 250, 106 S.Ct. 2505.

Generally, the burden is on the moving party to demonstrate that it is entitled to summary judgment. Margolis v. Ryan, 140 F.3d 850, 852 (9th Cir.1998); Retail Clerks Union Local 648 v. Hub Pharm., Inc., 707 F.2d 1030, 1033 (9th Cir.1983). The moving party bears the initial burden of identifying the elements of the claim or defense and evidence that it believes demonstrates the absence of an issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Where the non-moving party has the burden at trial, however, the moving party need not produce evidence negating or disproving every essential element of the non-moving party's case. Celotex, 477 U.S. at 325, 106 S.Ct. 2548. Instead, the moving party's burden is met by pointing out that there is an absence of evidence supporting the non-moving party's case. Id.

■ "If a moving party fails to carry its initial burden of production, the non-moving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial." Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Co., 210 F.3d 1099, 1102–03 (9th Cir.2000). "In such a case, the nonmoving party may defeat the motion for summary judgment without producing anything." Id. at 1103.

If the moving party carries its burden of production, however, the burden then shifts to the non-moving party to show that there is a genuine issue of material fact that must be resolved at trial. See Fed. R. Civ. P. 56(e); Celotex, 477 U.S. at 324, 106 S.Ct. 2548; Anderson, 477 U.S. at 256, 106 S.Ct. 2505; Nissan Fire, 210 F.3d at 1103. The non-moving party must make an affirmative showing on all matters in issue by the motion as to which it has the burden of proof at trial. Celotex, 477 U.S. at 322, 106 S.Ct. 2548; Anderson, 477 U.S. at 252, 106 S.Ct. 2505. See also William W. Schwarzer, A. Wallace Tashima & James M. Wagstaffe, FEDERAL CIVIL PROCEDURE BEFORE TRIAL, § 14:144. "This burden is not a light one. The non-moving party must show more than the mere existence of a scintilla of evidence." In re Oracle Corp. Secs. Litig., 627 F.3d 376, 387 (9th Cir.2010) (citing Anderson, 477 U.S. at 252, 106 S.Ct. 2505).

A genuine issue of material fact will exist "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson, 477 U.S. at 248, 106 S.Ct. 2505. In ruling on a motion for summary judgment, a court construes the evidence in the light most favorable to the non-moving party. Barlow v. Ground, 943 F.2d 1132, 1135 (9th Cir.1991); T.W. Elec. Serv. Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630–31 (9th Cir.1987).

## IV. FACTS

To the extent certain facts or conclusions are not mentioned in this Order, the Court has not relied on them in reaching its decision. In addition to considering the evidentiary objections raised by the parties, the Court has considered independently the admissibility of the evidence that both parties submitted and has not considered facts that constitute irrelevant or inadmissible evidence.

### A. UNCONTROVERTED FACTS

The following material facts are supported adequately by admissible evidence and are uncontroverted. They are "admitted to exist without controversy" for the purposes of this Motion. See L.R. 56-3.

Plaintiff insured a 2006 Toyota Tacoma ("Plaintiff's truck") with Infinity Insurance Company. (Declaration of Margarete Kibbett, ("Kibbett Decl."), Doc. No. 24, at ¶ 4.) Plaintiff's insurance coverage for the truck lapsed between November 19, 2013 and December 5, 2013. (Id. at ¶ 4.)

On December 18, 2013, Plaintiff reported to Defendant[4] that his truck was damaged near California State Route 78 on December 14, 2013, while he was in Ocotillo Wells.[5] (Kibbett Decl. at ¶¶ 2, 5.) Plaintiff contends the truck either sank in quicksand or "hit a mud puddle." (Complaint at ¶ 5.)

After examining the truck, Defendant divided the claim into two: one for the bumper, and one for the truck. (Kibbett Decl. at ¶ 3.) Defendant found evidence that the truck had been submerged in water and mud up to the top of the engine. (Id. at 7; Declaration of Andrew Gitelson (Gitelson Decl.) at ¶ 3(4)).[6] Defendant researched the weather records and found no evidence of rain on the date of loss or for the month of December. (Kibbett Decl. at ¶ 8; Gitelson Decl. at ¶ 3(5).)[7] Plaintiff admitted during his deposition that it did not rain while he was in Ocotillo Wells, it was "dry and sunny,"[8] and he did not see

4. Plaintiff disputes, but does not controvert, this fact. Plaintiff contends that "[n]othing in the claim notes ... indicate that Plaintiff notified Infinity [of the loss] on December 18, 2013." (Plaintiff's Opposition to Defendant's Statement of Uncontroverted Facts, "Opposition to SUF," at ¶ 2.) Ms. Kibbett's Declaration states that, "Ryan Gilbert reported [the loss] on December 18, 2013." (Kibbett Decl. at ¶ 2.)

5. Plaintiff disputes that he told Defendant his truck "sank in sand or dirt." Neither side provided admissible evidence demonstrating whether Plaintiff did or did not make this statement.

6. Plaintiff disputes this fact, but does not controvert it. Plaintiff provided no admissible evi-

dence from which the Court could controvert the fact.

7. Plaintiff disputes this fact, but does not controvert it. Plaintiff argues that the claim notes show Thermal, California received 0.14 inches of rain in December. (Id. at ¶ 11.) Ocotillo Wells, California is more than fifty miles from Thermal, California. Accordingly, the evidence Plaintiff cites seems to support Defendant's contention that Defendant was researching rainfall in the area, and does not controvert this fact.

8. Plaintiff disputes this fact, but does not controvert it. Plaintiff argues that, while Plaintiff admitted it was "generally" dry outside, there was a "wet, mudlike terrain on the day of the [loss]." (Opposition to SUF at ¶ 10.) Plaintiff provides no support for this contention.

any mud where his truck stopped before the incident. (Exhibit 19, Deposition of Ryan Gilbert, "Plaintiff's Dep.," at 88:8-17.) Plaintiff told Defendant that, after he stopped, the truck started sinking, and the ground formed an inverted "bow" with the rear axle of the truck touching dry ground, and the ground then allegedly cracked and water started coming through. (Id. at 89:14-21.)

Defendant could find no evidence of any quicksand or sinkholes at the location where Plaintiff's truck was allegedly damaged.[9] A representative from the Ocotillo Wells ranger station told Defendant that she had not heard of vehicles sinking on days where it did not rain.[10] (Kibbett Decl. at ¶ 8.)

Plaintiff testified that he had reported to Defendant that his brother witnessed the truck sinking. (Plaintiff's Dep. at 121:11-19.) Plaintiff's brother reported that they were off the freeway on a dirt road at the time. (Kibbett Decl. at ¶ 9; Gitelson Dec. at ¶3(6); Ex. 6, Jonathan Gilbert's Recorded Statement, ("Brother's Statement"), at pgs. 12-13.)) Plaintiff had told Defendant he could not identify the person who pulled the truck out of the quicksand, and provided no photographs of the sinking, or the loss to his truck, to Defendant.[11] (Plaintiff's Dep. at 100:17-23, 121:20-122:1; Kibbett

Decl. at ¶ 10.) Plaintiff did not have receipts or other documents showing that he was in Ocotillo Wells, California on December 14, 2013.[12] His bank statements did not reflect any gasoline purchases for his travel to Ocotillo Wells; rather they showed his last fuel purchase with an ATM card was on November 29, 2013. (Kibbett Decl. at ¶ 13; Ex. 8, Letter with Bank Statements.) During the claim, Plaintiff refused to provide the name of the friend whose cellphone he allegedly used to make cellphone calls for help. (Plaintiff's Dep. at 78:6-10; Kibbett Dec. at ¶¶ 9, 17.) Plaintiff's brother alleged Plaintiff used the cellphone of a passerby to call for help. (Kibbett Dec. at ¶ 9; Gitelson Dec. at ¶ 3(7); Ex. 6, Brother's Statement at pg. 9.)

Plaintiff's policy provided that it would not cover loss "resulting from the use of any vehicle in any racing event or off-road recreational activity." (Ex.1, Plaintiff's Policy, Exclusions—Part D, at ¶ 8.) Defendant's investigation showed that the damage to Plaintiff's vehicle was consistent with off-roading damage. (Kibbett Dec. at ¶¶ 4, 7; Gitelson Dec. at ¶ 3(4)).[13]

On January 3, 2014, Plaintiff agreed to provide Defendant with one month of his cellphone records. (Id.; Kibbett Decl. at ¶ 10.) On January 8, 2014, Plaintiff's mother called Defendant about her son's claim,

---

9. Plaintiff disputes this fact, but does not controvert it. Plaintiff provided no admissible evidence from which the Court could controvert the fact.

10. Plaintiff disputes this fact and claims the "evidence sited does not support this statement." (Id. at ¶ 19.) Ms. Kibbett's Declaration states that "[d]uring the claim, I also contacted the Ocotillo Wells ranger station. I reported the alleged facts of loss. I was told by a representative that she had not heard of vehicles sinking on dry days." (Kibbett Decl. at ¶ 8.) Plaintiff therefore does not controvert this fact.

11. Plaintiff does not dispute this fact, but contends Plaintiff did not take any photographs of the sinking. (Opposition to SUF at ¶ 23.)

12. Plaintiff disputes this fact, but does not controvert it. The only admissible evidence Plaintiff submitted to support his contention is his bank records, which show that he made no transactions on that day. (Plaintiff's Exhibit FA.) This is insufficient to controvert the fact that there are no documents showing Plaintiff was in Ocotillo Wells.

13. Plaintiff disputes this fact, but does not controvert it. Plaintiff provided no admissible evidence from which the Court could controvert the fact.

and Defendant again requested the cellphone records. (Kibbett Decl. at ¶ 12.) Plaintiff sent Defendant cellphone records for December 6, 2013 through December 14, 2013. (Plaintiff's Dep. at 183:11-13, 208:12-210:13.) These cellphone records were redacted to remove the last four digits of every cellphone number listed. (Id.; Kibbett Decl. at ¶ 13.) On January 10, 2014, Defendant sent Plaintiff a letter noting that he had not yet cooperated with the investigation by providing the requested cellphone records. (Kibbett Decl. at ¶ 14; Plaintiff's Dep. at 200:24-201:9.) On January 13, 2014, Defendant called Plaintiff and again requested his cellphone records. (Plaintiff's Dep. at 183:11-17, 204:22-205:2; Kibbett Decl. at ¶ 15.)[14] On January 20, 2014, Defendant's employees called Plaintiff twice to request his cellphone records.[15] (Kibbett Decl. at ¶ 16; Gitelson Decl. at ¶ 6.) On January 13, 2014 and January 20, 2014, Plaintiff sent Defendant a fax of his bank records reflecting transactions from November 23, 2013 through December 20, 2013. (Plaintiff's Exhibit FA at 204; Plaintiff's Exhibit FB at 208-09.)

On January 21, 2016, Plaintiff sent Defendant a fax with his cellphone records from November 23, 2013 until approximately 1:00 am on December 14, 2013 and again redacted the last four digits of every cellphone number listed. (Kibbett Decl. at ¶ 18; Gitelson Decl. at ¶ 6; Ex. 10, Facsimile, Jan. 21, 2014.) On January 21, 2014, Defendant sent Plaintiff a letter denying his claim for damage to the truck's bumper and again requested Plaintiff's complete unredacted cellphone records. (Kibbett Decl. at ¶ 19; Gittelson Decl. at ¶ 7; Ex. 11, Denial Letter, Jan. 21, 2014.) Plaintiff re-sent cellphone records, again redacting the last four digits, on January 23, 2014. (Ex. 12, Facsimile, Jan. 23, 2014; Kibbett Decl. at ¶ 20.)[16]

On January 31, 2014, Defendant wrote to Plaintiff and requested his cellphone records.[17] (Exhibit 13, Letter, Jan. 31, 2014.) On February 3, 2014, two of Defendant's managers spoke with Plaintiff's mother, his newly appointed claims representative, who agreed "to the best of her abilities … [to] send in the documents [requested] to complete [the] investigation."[18] (Exhibit 15, Letter, Feb. 7, 2014;

14. Plaintiff disputes, but does not controvert, this fact. Plaintiff contends there is no notation that unredacted records were requested in the claim notes. (Opposition to SUF at ¶ 36.) Ms. Kibbett's declaration states she "called Mr. Gilbert and left a message to request for the complete unredacted phone records" on January 13, 2014. (Kibbett Decl. at ¶ 15.) This call was also noted in the claim notes, where Ms. Kibbett wrote that she reminded Plaintiff that she "needed complete records as well as his friends [sic] telephone numbers." (Ex. 3, CN 0016, Jan. 13, 2014 notation.)

15. Plaintiff disputes, but does not controvert, this fact. Plaintiff contends the claim notes do not mention that any employee asked for the cellphone records. In Ms. Kibbett's declaration, she describes calling Plaintiff and requesting his cellphone records on January 20, 2014, and describes another employee, Rasheedah Johnson, calling Plaintiff to request his

phone records that same day. (Kibbett Decl. at ¶ 16.)

16. Plaintiff disputes, and controverts, that these were "the same phone records," because he included a broader date range of calls, from November 16, 2013 through December 14, 2013. Previously sent phone records only included calls from November 23, 2013 through December 14, 2013. (Opposition to SUF at ¶ 40; Plaintiff's Exhibit FB.) Plaintiff does not dispute that he redacted the last four digits of the phone calls.

17. Plaintiff disputes, but does not controvert, that Defendant requested Plaintiff's cellphone records. Exhibit 13, from Defendant, states, "[t]he cellular records and bank statements of both you and your brother Jonathon are needed as supports for the claim mentioned above." (Exhibit 13.)

18. Plaintiff disputes, and controverts, that Plaintiff's mother agreed to send Defendant the documents. Neither party sets forth such

Gitelson Dec. at ¶ 9; Declaration of Gaylen Matson, Doc. No. 24, at ¶ 4.) By February 26, 2014, Plaintiff still had not provided his unredacted cellphone records. (Plaintiff's Dep. at 233:20-234:9, 238:3-6; 151:21-24; 250:6-251:18.)

On February 26, 2014, Defendant denied Plaintiff's claim, stating that, "[Plaintiff] failed to provide the facts establishing the vehicle sinking into the mud, complete unredacted cellphone records, names of all parties involved, and the exact location of where the loss took place."[19] (Ex. 16, Denial Letter, Feb. 26, 2014; Gitelson Dec. at ¶ 10.)

Without the unredacted cellphone numbers, Defendant could not determine if:

- Plaintiff called tow truck companies from a different location on an earlier date;[20]
- Plaintiff called repair shops from a different location on an earlier date;[21]

- Plaintiff called the people he allegedly met in Ocotillo Wells before the alleged trip;
- Plaintiff's cellphone was destroyed;
- Plaintiff used a friend's cellphone on the day of the alleged loss;[22] and
- Plaintiff called anyone or if anyone called Plaintiff.[23]

(Kibbett Decl. at ¶¶ 23-24; Gitelson Dec. at ¶ 10.)[24]

On May 6, 2014, Plaintiff's counsel requested that Defendant reconsider its denial, stating that Plaintiff's truck "went through a patch of quick sand." (Exhibit 17, Letter, May 6, 2014; Gitelson Decl. at ¶ 11.) Plaintiff's counsel again attached the redacted cellphone records. (Id.) Based on the redacted cellphone records, Defendant could not determine who Plaintiff had called between December 6, 2013 and December 14, 2013.[25] Defendant again requested that Plaintiff show Defendant the loss location.[26] As Plaintiff never showed

information showing whether she agreed or did not agree, and the letter states that, Plaintiff's mother would submit such documents "to the best of her abilities." (Ex. 15.)

19. Plaintiff disputes that this was his first denial of coverage, but does not controvert the fact.

20. Plaintiff disputes, but does not controvert, that this was the only method to find out if Plaintiff called tow truck companies on different dates. Plaintiff failed to offer any admissible evidence in support of this proposition.

21. Plaintiff disputes, but does not controvert, that Defendant could not determine if Plaintiff called repair shops. Plaintiff contends Defendant could have called all repair shops in the area to try to discover if Plaintiff called a repair shop previously.

22. Plaintiff does not dispute or controvert the fact, but disputes that Defendant could not determine if Plaintiff called the people he met in Ocotillo Wells. One of the people Plaintiff claims he met, Art Fierro, returned Defendant's phone call, and Defendant never returned his phone call. (Plaintiff's Exhibit J, Declaration of Art Fierro, at ¶ 6.)

23. Plaintiff disputes, but does not controvert, this fact. Plaintiff contends Defendant could have "selected the numbers from the records they thought were necessary and simply asked [him] if he would agree for them to contact that individual." (Opposition to SUF at ¶ 41.) This speculation does not controvert the above fact.

24. Plaintiff disputes, but does not controvert, this fact. Plaintiff contends Defendant could have "selected the numbers from the records they thought were necessary and simply asked [him] if he would agree for them to contact that individual." (Opposition to SUF at ¶ 41.) This speculation does not controvert the above fact.

25. Plaintiff disputes, but does not controvert, that Defendant could not determine who Plaintiff had called in that time frame. Instead, Plaintiff suggests Defendant could have requested any relevant phone numbers from Plaintiff.

26. Plaintiff disputes, and controverts, that Defendant requested this information on May 15, 2014. (Opposition to SUF at ¶ 53.) Defendant requested this information on April 8, 2014. (Matson Decl. at ¶ 5.)

Defendant the loss location, Defendant was unable to verify the existence of the sink hole or quicksand.[27]

Plaintiff's policy provides that in the event of an "auto accident or loss, you and any person claiming coverage under this policy must ... cooperate with us in any matter concerning a claim or suit. ... Failure to comply with any or all of the conditions above may result in our refusal to extend to you protection under this policy for the accident or loss." (Ex. 1, the Policy, pg. 6.) The policy also provides that should a policyholder wish to sue, there must be "full compliance with all terms of this policy." (Id. at 19.)

## B. DISPUTED FACTS

Defendant contends that Plaintiff has no evidence of malice, oppression, or fraud; Plaintiff contends that Defendant's failure to contact his friend, Art Fierro, and Defendant's failure "to consider how Plaintiff's phone records supported his claim," demonstrates malice, oppression, and fraud. (Opposition to SUF at 45.)

## V. DISCUSSION

### A. PLAINTIFF'S BREACH OF CONTRACT CLAIM

▆▆ "A cause of action for breach of contract requires proof of the following elements: (1) existence of the contract; (2) plaintiff's performance or excuse for non-performance; (3) defendant's breach; and (4) damages to plaintiff as a result of the breach." CDF Firefighters v. Maldonado, 158 Cal.App.4th 1226, 1239, 70 Cal.Rptr.3d 667 (2008). Defendant contends Plaintiff's failure to disclose the unredacted cellphone records breached the insurance policy's "cooperation clause." (Motion at 10.)

The insurance policy stated under the section titled, "DUTIES IN CASE OF ACCIDENT OR LOSS," that:

In the event of an auto accident or loss, you and any person claiming coverage under this policy must: ... (2) cooperate with [the insurer] in any matter concerning a claim or suit.... **FAILURE TO COMPLY WITH ANY OR ALL OF THE CONDITIONS ABOVE MAY RESULT IN OUR REFUSAL TO EXTEND TO YOU PROTECTION UNDER THIS POLICY FOR THE ACCIDENT OR LOSS.** ... We may not be sued unless there is full compliance with all terms of this policy.

(Exhibit 1, pg. 6, 19) (emphasis in original).

▆▆ Provisions of an insurance policy that require an insured to cooperate and meet various conditions are enforceable, and the violation of such provisions by an insured may be grounds for denying a claim. Chierfue Her v. State Farm Ins. Co., 92 F.Supp.3d 957, 971 (E.D.Cal.2015) (collecting cases); Brizuela v. Calfarm Ins. Co., 116 Cal.App.4th 578, 589, 10 Cal. Rptr.3d 661 (2004) ("[I]n the absence of a reasonable excuse, when an insured fails to comply with the insurance policy provisions requiring an examination under oath and the production of documents, the breach generally results in a forfeiture of coverage, thereby relieving the insurer of its liability to pay, and provides the insurer an absolute defense to an action on the policy.").

▆▆ "California courts require a showing that the insurer was prejudiced in its investigation by the insured's failure to cooperate in order to void the policy." Ram v. Infinity Select Ins., 807 F.Supp.2d 843, 857 (N.D.Cal.2011). "The submission of a

---

**27.** Plaintiff disputes, but does not controvert, that Defendant could not locate the quicksand or sinkhole. Plaintiff notes he gave an "exact description of the location." (Opposition to SUF at ¶ 54.)

proof of loss by the insured is subject to the substantial performance standard." Chierfue Her, 92 F.Supp.3d at 971 (collecting cases). "[I]f the deficiencies in an insured's submissions are substantial and 'a far cry from minor defects,' then there is no substantial performance." Id. (citing Abdelhamid v. Fire Ins. Exchange, 182 Cal.App.4th 990, 999–1001 (2010)).

Defendant contends Plaintiff's refusal to provide unredacted telephone numbers constitutes failure to cooperate, and therefore, is entitled to summary judgment on Plaintiff's breach of contract claim. (Motion at 10-14.) Plaintiff concedes that he did not provide the unredacted telephone numbers, but claims his refusal does not constitute failure to cooperate because Defendant could surmise some limited information from the redacted telephone records, and because Defendant did not return the telephone call of the one witness whose telephone number Plaintiff did provide. (Opposition at 13-16.)

Defendant cites to three cases to support its arguments. (Motion at 12.) First, in Gatson v. Allstate Insurance Co., the court held that the plaintiff did not cooperate because he failed to provide his income tax returns, bank records, cellphone records, and estimates to support his damage claim. No. 4:08–CV–0749, 2008 WL 5716525, at *3 (N.D.Ohio July 31, 2008). Second, in Rajwinder Kaur v. Fire Ins. Exchange, an unpublished opinion, the court affirmed a jury verdict where the appellant had failed to cooperate by failing to submit telephone records and financial records. No. F055359, 2009 WL 5107838 at *2–4 (Cal.Ct.App. Dec. 29, 2009). Third, in Doerr v. Allstate Insurance Co., the Sixth Circuit affirmed summary judgment, holding an insured's refusal to provide his cellphone records and financial statements, which were relevant to determine the plaintiff's contacts around the time of the fire, constituted a failure to cooperate. 121 Fed.Appx. 638, at 639–40 (6th Cir.2005).

These cases are not binding on this Court, but they are persuasive in determining if the failure to provide unredacted cellphone records constituted a failure to cooperate. Plaintiff contends these cases are irrelevant because the courts in all three cases held the failure to provide all cellphone records constituted a failure to cooperate. (Opposition at 13.) Here, however, the provision of generic information—i.e., the area code and the first three digits—is tantamount to an utter failure to provide telephone records.

Defendant required the cellphone records in order to determine if there was coverage for the damage sustained to Plaintiff's truck, and Plaintiff's failure to provide them constitutes failure to cooperate. See Martinez v. Infinity Ins. Co., 714 F.Supp.2d 1057, 1062 (C.D.Cal.2010) (granting summary judgment because "Infinity required *at least* the car payment records, if not Martinez's financial records, to substantiate her claim, evaluate the bizarre inconsistencies in her testimony, and calculate the value of the vehicle.") (emphasis in original); Ram, 807 F.Supp.2d at 859 (granting summary judgment when "[t]he records that Plaintiff was willing to submit [were] insufficient to allow a thorough investigation of his claim . . . . ."); Abdelhamid, 182 Cal.App.4th at 990, 106 Cal.Rptr.3d 26 (granting summary judgment for the insurer where the insured refused to provide requested records because "where the insurer has reason to suspect arson, it is relevant and material to inquire into the financial condition of the insured because an insurer is entitled to develop circumstantial evidence of the insured's involvement in the suspected arson.") (citations omitted).

Plaintiff concedes he never provided Defendant with the unredacted cellphone rec-

ords. Defendant requested Plaintiff's unredacted cellphone records more than seven times. (See generally supra III, Statement of Undisputed Facts.) Without this information, Defendant could not confirm that Plaintiff had not previously contacted a towing company or any repair shops, could not confirm which of Plaintiff's friends he had been in contact with that day, could not obtain accurate witness accounts, and could not verify that Plaintiff lost his cellphone before the loss. (Motion at 12-14.) This prevented Defendant from determining whether there was coverage for the loss. The Court finds the particular facts of this case support both a finding of prejudice and that Plaintiff failed to cooperate. Accordingly, the Court GRANTS Defendant's Motion for Summary Judgment as to the breach of contract claim.

## B. PLAINTIFF'S BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING CLAIM

 Plaintiff asserts a cause of action for breach of the covenant of good faith and fair dealing. (Complaint at ¶¶ 1-11.) Plaintiff contends that Defendant's refusal to pay for his losses was in bad faith.

Under California law, an insurer cannot breach the duty of good faith and fair dealing unless benefits are due under the policy. Chan v. Empire Fire & Marine Ins. Co., No. C–10–02528 EJD, 2011 WL 3267765, at *6 (N.D.Cal. July 29, 2011) (collecting cases); Amadeo v. Principal Mut. Life Ins. Co., 290 F.3d 1152, 1165 (9th Cir.2002) ("[A] breach of the obligations of the underlying contract is a sine qua non of a bad faith claim").

Because a contractual obligation is the basis of a bad faith claim, Plaintiff does not have a claim for breach of the covenant of good faith and fair dealing unless policy benefits are due. As discussed above, Plaintiff cannot maintain a claim for breach of contract. Accordingly, without a contractual underpinning, Plaintiff has no

basis for a bad faith claim. Defendant's Motion on this claim is GRANTED.

## VI. CONCLUSION

For the reasons stated above, the Court GRANTS Defendant's Motion for Summary Judgment.

**IT IS SO ORDERED.**